JACINTA LÓPEZ ACEVEDO, Plaintiff and Appellee, *v.* AGUSTÍN ÁLVAREZ, Defendant and Appellant.

No. 9027.  Argued December 5, 1944.—Decided January 15, 1945.

*Isaías M. Crespo* for appellant.  *Antonio Reyes Delgado* for appellee.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

In this case, the plaintiff, in the complaint filed against her former husband, Agustín Álvarez, prayed that it be declared by the District Court of Arecibo that the five properties described in the complaint were purchased with funds belonging to the separate estate of the plaintiff, as the defendant had no share in said funds. She further prayed that the proper corrections be made in all the records entered in the registry of property with respect to the ownership of said properties. She alleged that the fact of the separate character of said properties was not set forth in the corresponding deeds, notwithstanding her request for that purpose, because the attesting notary had told her that as the purchase was made in her name, it was unnecessary to state such fact; that after she was divorced, she requested the defendant to state that fact in a public instrument and that he refused to do so, except on condition that she convey to him the absolute title to two of said properties, which was not acceptable to her.

The defendant in his answer admitted that each of the properties is worth over $1,000 and that all of them were acquired by purchase from the persons alleged by the plaintiff. He denied, as being absolutely untrue, that the plaintiff was the owner of those properties or that she had acquired them in the manner set forth in her complaint, and on the contrary alleged that said properties were acquired by the conjugal partnership and with funds belonging to the latter; that the plaintiff on divers occasions, in previous judicial and extrajudicial proceedings, had admitted and accepted that the properties belonged to the conjugal partnership. He denied that the reason for making it appear in said deeds that the properties were acquired in the name of the wife was the one set forth in her complaint. The defendant further alleged that, after the divorce was decreed, he and his former wife entered into an agreement as to the

manner in which the liquidation of the conjugal partnership should be made, which was carried out by means of deed No. 65 executed before Notary Aníbal E. Boneta of Arecibo. As a matter of defense, he alleged that he had brought into the marriage the sum of $3,000 which, together with the money (the amount is not specified) brought in by his former wife, was used in sundry business deals; that on a certain occasion she proposed that they be divorced in order to liquidate the conjugal partnership, in view of the fact that certain differences or disagreements had arisen between them, but that later there was a reconciliation and they desisted from such purpose; that subsequently new disagreements arose and the wife filed a complaint for divorce in the District Court of Aguadilla; that the existence of community property was specifically alleged in said complaint; that the property thus mentioned is the same one involved herein; that in order that the judgment of divorce might become operative immediately and at the suggestion of the plaintiff, he waived his right of appeal in the divorce case; that thereupon the liquidation was proceeded with and it was carried out by means of the above-mentioned deed No. 65, whereby the houses numbered 2, 3, and 5 were awarded to the defendant; that afterward, the plaintiff offered to remarry the defendant and, upon such proposal being rejected by the latter, the plaintiff, acting under the influence of jealousy and the knowledge that the defendant was planning to contract marriage with a certain young lady, and seeking to thwart such purpose, filed the complaint herein and recorded a notice of *lis pendens* against the properties awarded to the defendant and warned the tenants not to pay to him the corresponding rent. By way of counterclaim, the defendant seeks to recover the sum of $1,000 as the net proceeds of the rent received by the plaintiff on one of the houses awarded to the defendant, after deducting the expenditures for repairs and taxes.

The lower court stated the questions to be decided, thus:

(a) Who was the owner of the money with which the properties involved in this litigation were acquired? Did it belong to the plaintiff, she having received it by way of gift or inheritance from her father Pablo López, or did it represent the proceeds of the administrative work of the husband during the marriage, or did it belong partly to her and partly to him?

(b) If it should be held that the money was the separate property of Jacinta López Acevedo, what is the probative force of deed No. 65 which was executed on July 11, 1943, before Notary Boneta Colón, whereby the plaintiff and the defendant appeared to have liquidated the conjugal partnership? And on the assumption that it has no probative force whatsoever, could a pronouncement be made on that point under the present state of the pleadings and the proof?

From the judgment whereby the complaint was sustained, the defendant has taken the present appeal, in which he assigns eleven errors claimed to have been committed by the trial court. Since we think that the errors Nos. 3 to 8, inclusive, involve the same question—error in the weighing of the evidence—we shall consider them jointly and ahead of the others. Let us look at the evidence.

In support of her allegation that the properties involved in this suit belong to her separate state, they having been acquired with money representing the proceeds of an inheritance from her father and of gifts received in her lifetime, the plaintiff introduced in evidence a deed of sale, executed before Notary Aníbal E. Boneta Colón, whereby she sold for $22,500 to Arturo S. Marqués certain properties which she had acquired by inheritance from her father, and also an inheritance tax receipt issued by the Treasurer of Puerto Rico. In said receipt are described the properties constituting the inheritance, which for taxation purposes was valued at $32,800. This evidence shows plaintiff's financial ability to acquire the properties, the ownership of

which is in controversy. And in order to prove that it was she who really acquired them, she introduced the corresponding deeds of sale executed before Notary Aníbal E. Boneta Colón, wherein she appears as the sole and exclusive purchaser. It should be noted, however, that although it is true that she appears as the sole and exclusive purchaser in all the instruments, it is no less true that in none of said deeds was it stated that the money used for the purchase was derived from the proceeds of the sale of the properties inherited from her father. She alleges in her complaint that she demanded that a recital to that effect should be included in the deed *"and it was suggested to her by the attesting notary that, as the purchase was made in her name, it was not necessary to state such fact."*

The plaintiff testified in her own behalf, and stated that she was a housewife; that she had been divorced from Agustín Álvarez (defendant), after being married to him for eight years; that when they were married they went to live with her father; that from there they moved to house No. 51 on Cristóbal Colón Street, which she had purchased with money given to her by her father; that the latter owned several properties including a large tract which was leased to Central Cambalache for a monthly rent of $200. That her father's family consisted of herself and of her stepmother; that her former husband could not have brought any property into the marriage, because prior to their marriage he had worked as a truck driver for Central Cambalache and when he married her he was unemployed; that he never worked during the marriage; that it was her own father who supported them. That out of the $20,000 she received from the sale to Marqués of the properties inherited by her from her father, she deposited $15,000 in the bank, paid $1,000 to the attorney, and gave $4,000 to her husband in order that he might purchase several automobiles to engage in the business of a public carrier. That the $15,000 deposited in the bank were used for the purchase of the various properties;

that all those properties were recorded in her name and were managed by her and the tenants paid the rent to her; and the receipts for water consumption and for taxes on the houses were issued to her name.

In support of his allegation that the plaintiff had appeared in court and admitted that said properties belonged to the conjugal partnership, the defendant introduced in evidence: (a) a certified copy of the divorce complaint filed by the defendant in the District Court of Arecibo; (b) a certified copy of the divorce complaint filed, in the District Court of Aguadilla, by the plaintiff herein against her former husband, in which reference is made to certain community property; (c) the stenographic record of the hearing in the suit for divorce wherein two witnesses stated that there was community property, without describing the same; and (d) a deed of liquidation of community property.

The defendant testified that he was married to the plaintiff for eight years; that he had brought $3,800 from the United States; that the properties were acquired with money belonging to both of them; that at the time of their marriage, his wife had no money; that the house on Cristóbal Colón Street was acquired with funds belonging to both of them, one-half of the amount being contributed by him out of the proceeds of money invested by him, and the other half was contributed by her; that the properties were thus acquired, one-half of the money belonging to him and the other half belonging to her separate estate; that due to certain differences which arose between them, on one occasion his wife expressed a desire to be divorced from him and then he brought an action of divorce against her which was not prosecuted to judgment because of their intervening reconciliation; that afterward, by reason of new disagreements between them, she brought an action of divorce against him in the District Court of Aguadilla; that they were divorced and after the divorce a liquidation of the community property was made by means of the deed executed before Notary

Boneta Colón. On cross-examination by the plaintiff, he stated that he did not remember exactly the month in which he came from the United States; that he did not recall the month in which he was married; that he did remember he brought $3,800 from the United States which he did not deposit in any bank because at that time "when I came the banks had already failed and I did not want to lose my money"; that he did not deposit it in the post office either; that he kept the money in his house; that he started to work as a mechanic and invested $800 in a public service vehicle; that he engaged in the business of buying old cars in order to repair and sell them; that he gave the money earned to his wife for safe-keeping; that the plaintiff had delivered to him $2,500 out of the $22,500 obtained from the sale of the properties to Marqués because she owed that sum to him on account of a loan which he had made to an uncle of hers; that he did not know what use she had made of the remaining $20,000, nor what she did with the $6,000 received by her from Central Cambalache.

The plaintiff testified in rebuttal that her former husband had not brought a cent into the marriage; that it was her own father who paid all the expenses "for the marriage"; that she had to pay for the suit of clothes in which he was married; that he never made any loan to any uncle of hers; that her former husband only delivered to her $20,000 from the sale of the properties; that he never had any cattle business or delivered any money to her; that from the public automobile business, not withstanding the fact that she had given him $4,000 for the purchase of the vehicles, not only did she fail to receive anything but she had to pay all the expenses for their repair; that prior to the death of her father, the latter was the one who gave her money for the support of her home, and that after he died, such expenses were paid out of the proceeds of her own property; that apart from the amount invested in the properties involved in this suit, the remaining portion of the money

"was squandered by her husband with bad women and spent in paying household expenses"; that during her marriage she never "saw him work"; that her husband did not contribute anything for the purchase of the properties; that the complaint in the action for unlawful detainer brought against Herminia Rosado was prepared by her former husband and Notary Boneta Colón and that she was informed that they were going to institute such proceedings but she never read or signed said complaint; that it is not true that she had insulted her husband; that since they were divorced she "has not exchanged any word with him."

The evidence was weighed by the trial judge in the following terms:

"The plaintiff asserts, and the defendant admits, that for taxation purposes the properties are recorded in her name and that it is she who pays the taxes; that for the purpose of the water consumption service the houses are recorded in her name and that such consumption is paid by her; and that the receipts for the collection of the rent on the houses are issued in her name, although it is the defendant who has been getting the money.

"Alvarez has not explained why these acts of administration and ownership have not been exercised by him but by his wife.

"While the plaintiff, with the corroboration of the defendant, has established the existence of the money which she alleged to have inherited from her father, the defendant has failed to show to the satisfaction of the court the origin and existence of the money which he claimed to have brought from the United States.

"The suscribing Judge does not believe defendant's version as to his having worked on the continent or as to his having brought from there savings amounting to $3,800. His testimony in this respect has failed to convince us.

"The plaintiff denies that the defendant delivered any money to her when they were married; she asserts that the defendant never delivered to her any money derived from the administration of her property and maintains that she has delivered almost the whole of her capital, amounting to over $30,000, to the defendant, and that the latter has squandered it without it having yielded a cent of gain or profit.

"The court gives credit to the whole of the testimony of the plaintiff; she is a guileless woman who inspires absolute confidence in her testimony. All the controlling elements of judgment and reasonable weighing of the evidence are in her favor. She narrated candidly and without vacillation all the vicissitudes of her married life, her business deals, and the spoliation which she suffered at the hands of her husband.

"The attorney for the defendant is a practitioner with long experience in the art of cross-examination and he was in a position to bring forth any weakness in the testimony of the plaintiff which was never impeached by him.

"Apart from the documentary evidence and the admissions of the defendant, which strongly tend to corroborate it, the testimony of the plaintiff in itself has produced in the mind of the court the absolute conviction that her statements are true and, therefore, her version completely overcomes that of the defendant, to whom the court cannot accord any credit, *regard being had for the form and character of his testimony* and for his conduct respecting the affairs of the plaintiff as the same appears from the whole evidence.

"In the mind of a man who loves justice and is vested with the function of administering and searching for it, no room is available for any conclusion other than the one we have reached herein, namely, that the funds with which the properties mentioned in the complaint were acquired belong separately and exclusively to Doña Jacinta López Acevedo and were derived from the estate of her deceased father; and that the defendant has owned no part of those funds or properties, either as his separate estate or as his share in community property." (Italics ours.)

The close and careful examination we have made of the whole evidence has left in our minds the same impression produced in the mind of the trial judge, who had the opportunity, not available to us, of observing and hearing the parties herein while they testified. It is our duty not to vary the findings made by the trial court with which we are in full accord.

In the first two assignments it is urged that the lower court erred in declaring the nullity of the deed of liquidation and partition of community property, within this

proceeding and in the absence of any prayer in the complaint for a pronouncement to that effect.

The alleged error is nonexistent. The plaintiff alleged and proved that the properties described in the complaint, which were acquired by her in her name during the marriage and which were presumed to be community property, really belong to her separate estate, as she had acquired them with funds derived from the estate of her deceased father. The defendant alleged—and unsuccesfully sought to prove—that the properties in question had been acquired with the proceeds of his administrative work during marriage or with funds contributed partly by her and partly by him.

As an essential element of proof the defendant introduced a copy of the deed of partition of community property. The defendant maintains that the contents of said deed cannot be varied by parol evidence; that the partition having been embodied in a public instrument, the probative value of the latter cannot be collaterally attacked; and that, as the plaintiff executed said instrument, she is now estopped to deny or challenge the contents of the same.

From the stenographic record it appears that upon the deed of partition of community property being offered in evidence, the plaintiff objected to its admission on the ground that the evidence introduced by her had shown that no consideration whatsoever was involved in the act or contract embodied in said deed. The instrument was admitted; but, as the trial court reached the conclusion that the evidence for the plaintiff was worthy of credit and that for the defendant was not, and that the plaintiff had satisfactorily proved that the properties in question had been acquired by her with her own funds, it was proper for the lower court to hold that the partition set forth in said deed was void for want of consideration or for the falsity of the consideration stated therein.

Scaevola, in his *Comentarios al Código Civil*, volume 20, pp. 786 and 787, says:

"The falsity of the consideration may be set up cither in the complaint or by way of exception, that is, either by raising in the first instance and fully the question of nullity, or by resisting the enforcement of the contract and then pleading the simulated character of the consideration. The burden of proof is upon the party who seeks, asserts, or sets up the nullity; and if his adversary relies on the existence of a real and lawful consideration, then it will be incumbent upon the latter to prove such fact. A similar view is stated by the commentator Manresa when he says: 'On the allegation that the consideration is false, the burden to establish that fact is upon the debtor or the contracting party who refuses to fulfill the contract, since such falsity cannot be presumed, and once evidence is introduced to show the same, it is incumbent on the creditor or the party who seeks to enforce the contract, to prove the existence of a real and lawful consideration.'"

The plaintiff successfully established her defense of false consideration. The evidence introduced by her was sufficient to overcome the presumption of truth which the law (Code of Civil Procedure, §§ 463 (2) and 464 (38)) provides regarding the facts recited in a written instrument, subject to the exception that such rule does not preclude the introduction of parol evidence to prove the nonexistence of a consideration.

Once the nullity of the partition, for want or falsity of the consideration, had been satisfactorily shown, what legal reason or ground was there for the trial court to refrain from declaring void the deed embodying such partition? The reasons and grounds adduced by the appellant are purely technical and cannot affect in any way the substantive rights of the parties. Both the plaintiff and the defendant, who are the only persons interested in the controversy herein, submitted themselves to the jurisdiction of the court and introduced their respective evidence—the defendant seeking to establish the validity of the partition and the plaintiff seeking to prove, as she did, that the alleged partition was null and void by reason of the falsity of the consideration. Under such circumstances, the court was bound to settle the

conflict raised by the evidence. If the evidence for the plaintiff was not worthy of credit, the deed of partition of community property was and must be declared void; if it did not deserve any credit, the partition must be declared valid. As the trial court accorded full credit to the evidence for the plaintiff, it acted correctly in decreeing the nullity or nonexistence of said partition deed, thus removing once and for all any cloud upon plantiff's title to the properties claimed by her which might result from the said deed.

It is true that the annulment of the deed of partition was not specifically prayed for in the complaint; but the relief granted by the court is fully in accord with the allegation of the complaint.

The judgment appealed from should be affirmed.